J-S12041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRENTON D. BISHER, CARLA S. BISHER, AND ESTATE OF CORY ALLEN BISHER, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| BRIAN CIVIC, EASTERN PENNSYLVANIA GASTROENTEROLOGY AND LIVER SPECIALISTS, PC, LEHIGH VALLEY ANETHESIA SERVICES, PC, LEHIGH VALLEY HEALTH NETWORK, INC., LEHIGH VALLEY HOSPITAL, INC., LVPG PULMONARY AND CRITICAL CARE MEDICINE, BONNIE PATEK, FREDERIC STELZER, JENNIFER STROW, DOROTHEA WATSON, AND NORMA D. WILSON | : : : : : : : : : : : : : | No. 2582 EDA 2025 |
| APPEAL OF: BRENTON D. BISHER AND CARLA S. BISHER | : : | |

Appeal from the Order Entered September 9, 2025
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2017-C-2434

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED AUGUST 3, 2026**

Brenton D. Bisher and Carla S. Bisher (together, "Appellants") appeal

*pro se* from the trial court's order entered on September 9, 2025, which

granted a motion for summary judgment filed by defendants Lehigh Valley

_____

[*] Retired Senior Judge assigned to the Superior Court.

Health Network, Inc. ("LVN"), Lehigh Valley Hospital Inc. ("LVH"), and Bonnie Patek, D.O. (together, "Lehigh Defendants") and granted a motion for summary judgment filed by defendants Frederic A. Stelzer, M.D. and Eastern Pennsylvania Gastroenterology and Liver Specialists ("EGP"), all of whom, together, were the last remaining defendants. Appellants raise various issues stemming from the court's grant of summary judgment. After careful review, we affirm.

The trial court set forth the facts of this case as follows:

This case began on August 3, 2017[,] when [Appellants] initiated a medical malpractice lawsuit on behalf of themselves individually and on behalf of the estate of their deceased son[, Cory Bisher].[1] Following extensive motions practice concerning the sufficiency of certificates of merit presented by the plaintiffs, the court entered two different orders on June 11, 2018.

In one order, the court dismissed the counts of the plaintiffs' complaint against [the Lehigh Defendants]. The court had sustained a demurrer filed by [the Lehigh Defendants] on the basis that [the] plaintiffs' certificates of merit, as amended, were deficient under [Pennsylvania Rule of Civil Procedure] 1042.3 and 40 P.S. § 1303.512. In the second order entered on the same date, the court struck with prejudice amended certificates of merit filed against defendants [] Stelzer [] and [EPG], and granted [the]

_____

[1] Although the estate was a plaintiff in the trial court, it is not a party to this appeal. Further, as Appellants are proceeding *pro se*, they can only raise claims on behalf of themselves, and not on behalf of Cory's estate. *See Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 390 (Pa. 2021) (stating that "for largely the same reasons that corporate entities must be represented by a lawyer, an attorney must represent the estate"). To the extent that the parties and trial court refer to the "plaintiffs" in connection with this appeal, for purposes of this appeal, we recognize that we may only review Appellants' claims on their own behalf and not on behalf of the estate.

plaintiffs leave to file an amended complaint against defendants Stelzer and EPG within 30 days of the date of the order.

Defendants Stelzer and EPG filed a praecipe for entry of judgment [of] *non pros* on June 12, 2018. [The] plaintiffs filed a motion for reconsideration on June 13, 2018[,] of the court orders entered on June 11, 2018. On June 18, 2018, [the] plaintiffs filed a motion to strike the praecipe for entry of judgment of *non pros*[. The] plaintiffs filed an amended complaint against defendants Stelzer and EPG on June 29, 2018.

On July 18, 2018, defendants Stelzer and EPG filed an answer to [the] plaintiffs' motion to strike the praecipe for entry of judgment. On July 21, 2018[, the] plaintiffs filed an amended motion to strike defendants Stelzer['s] and EPG's judgment of *non pros*. Argument was held on the various motions on August 6, 2018. The court denied all of [the] plaintiffs' motions in an order and opinion dated September 5, 2018. On September 14, 2018, the *pro se* plaintiffs filed an appeal from the dismissals to the Pennsylvania Superior Court.

On November 12, 2018, Laura A. Walker, Esq[uire] filed an entry of appearance to represent the plaintiffs before the Superior Court. Before [Attorney] Walker entered her appearance, the plaintiffs had been acting in a *pro se* capacity to litigate the claims of not only themselves, but also for the Estate of Cory Allen Bisher. On June 30, 2020, the Superior Court entered an order agreeing with plaintiffs' counsel that [Appellants] should not have been allowed to represent the Estate of Cory Allen Bisher as [] non-attorney[s], and that[,] therefore[,] the lawsuit representing the claims of the Estate were void *ab initio* due to the unauthorized practice of law[.] The Superior Court also held the lack of any endorsement by the second individual plaintiff, Brenton Bisher, on the verification of the complaint[,] rendered the entire complaint a legal nullity and deprived the Superior Court of any jurisdiction over the matter. As a collateral consideration, the Superior Court also held the certificates of merit as submitted by [the] plaintiffs did not meet the requirements of specificity called for under [Rule] 1042.3.

[The] plaintiffs filed an appeal of that determination to the Pennsylvania Supreme Court. On December 22, 2022[,] that Court reversed the decision of the Superior Court on the grounds the lack of a signed verification by both individual plaintiffs did not [] render the complaint void *ab initio*, but was a correctable error.

The Supreme Court agreed with the Superior Court that the *pro se* plaintiffs could not represent [their son's estate], but also found the [the trial court] and the Superior Court incorrectly deemed the certificates of merit as amended to be deficient under [Rule] 1042.3 and [] Section 1303.512. The case was remanded back to the trial court for [the] plaintiffs to file any further pleadings as represented by counsel.

Leon Aussprung, [M.D.,] Esq[uire,] also entered an appearance to represent all three plaintiffs before the appellate courts. Upon remand of the case from the Supreme Court, he filed an entry of appearance before the trial court on January 12, 2022. However, on January 2, 2024, [Attorney] Aussprung filed a petition for leave to withdraw [all of the plaintiffs' counsels' entries of appearance and representation of plaintiffs]. Within his petition, [Attorney] Aussprung asserted that he and his firm had engaged in a substantial amount of pretrial discovery, including deposing five of the individually named defendants in the within matter. [Appellants] were also deposed.

After proceeding with the case for approximately 18 months, [Attorney] Aussprung, who is also a physician, concluded that the theory of negligence and medical malpractice offered by [Appellants] did not align with the evidence developed over the course of discovery, i.e., [Appellants] asserted the cause of death of their son was due to improper management of a gastrointestinal bleed as opposed to the aspiration causing septic shock and respiratory failure as delineated on the decedent's death certificate. Following a hearing on the petition [to withdraw], [Attorney] Aussprung's request [] was granted [] on February 1, 2024[, and Attorneys Aussprung and Walker were granted leave to withdraw, along with co-counsel James E. Hockenberry, Esquire].

In the order granting the petition[, the trial court] stayed any further proceedings in the case until further order of court and scheduled a status conference in the within matter for June 3, 2024. In footnote 2 of the February 1, 2024 order, [the] plaintiffs were directed to notify the court if they obtained new counsel. [Appellants] filed a petition for a writ of mandamus with the Pennsylvania Supreme Court on February 16, 2024[,] to challenge [the] February 1, 2024[ order]. Within the [petition for a writ of mandamus], the plaintiffs asked the Supreme Court to direct the trial court to rescind the order allowing [Attorney] Aussprung to withdraw as counsel and to reinstate [Attorney] Aussprung as

counsel for the plaintiffs in the within matter. [. . .] On July 24, 2024 the petition for writ of mandamus was denied. The Supreme Court also denied [the] plaintiffs' petition for clarification on August 27, 2024. Plaintiff Carla Bisher appeared by zoom for the status conference on September 6, 2024[,] without counsel.

Ultimately, [Appellants] were unable to find new counsel to represent the estate of their son. [Absent licensed counsel] to represent the interests of the estate of Cory Bisher as a plaintiff in the within matter, on September 18, 2024, th[e trial] court issued a rule to show cause why the within matter should not be dismissed in compliance with the order of court entered by the Pennsylvania Supreme Court on December 22, 2021[,] in which it held [Appellants were] engaged in the unauthorized practice of law in representing the Estate of Cory Allen Bisher and that [the estate] could not proceed in the litigation without counsel. A hearing was scheduled on the rule for November 27, 2024.

Following the hearing on November 27, 2024, the court entered an order on January 17, 2025[,] dismissing the Survival Act[2] count of [the] plaintiffs' amended complaint and all claims brought in [the] plaintiffs' amended complaint by the Estate of Cory Allen Bisher[], with prejudice. The remaining plaintiffs, [Appellants], were granted leave to submit a fully signed verification of the certificates of merit previously filed in the case within thirty days. The case was listed for a status conference on March 3, 2025[,] to identify a trial date from the remaining counts of the amended complaint.

On January 28, 2025[, the] plaintiffs filed a petition for review of the January 17, 2025 order with the Superior Court[.] The Superior Court denied [the] petition for permission to appeal on March 28, 2025[,] and denied reconsideration of that disposition on April 10, 2025. [T]he plaintiffs did not file any appeal of the dismissal of the survival action to the Pennsylvania Supreme Court. Following a status conference on April 14, 2025, a case management order was entered on April 16, 2025[,] which set a discovery deadline of June 1, 2025[,] and required [Appellants] to serve all expert reports upon [the] defendants by July 1, 2025. On July 2, 2025, [the Lehigh Defendants] filed a motion for summary judgment. On July 3, 2025, defendants Stelzer and EPG

_____

[2] *See* 42 Pa.C.S. § 8302.

- 5 -

also filed a motion for summary judgment. The defendants premised their respective motions for summary judgment on the basis that [the] plaintiffs failed to produce any expert opinions and failed to produce evidence of facts essential to their medical malpractice cause of action. [Appellants] filed a "Limited Response" to both motions for summary judg[]ment on July 7, 2025. Defendants [Stelzer and EPG] filed a sur reply brief on July 31, 2025. Argument on the motions for summary judgment was held on August 29, 2025, after which time the matter was taken under advisement.

On September 9, 2025, the court entered an order granting the [] motions for summary judgment. Appellants filed [a] notice of appeal on September 29, 2025. The court entered an order on September 30, 2025[,] directing Appellants to file a concise statement of [errors] complained of on appeal within twenty-one [] days of the entry of that order.

Trial Court Opinion, 11/24/25, at 1-6 (citations, quotation marks, brackets, and unnecessary capitalization omitted). Appellants and the trial court complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellants present the following eight issues[3] for our review:

_____

[3] Appellants' brief violates Pennsylvania Rules of Appellate Procedure 2116(a) and 2119(a) insofar as the brief only raises eight issues in the statement of questions involved, **see** Appellants' Brief at 16-19, but Appellants purport to argue ten different issues in the argument portion of their brief. **See** Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **see also** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). To the extent that Appellants raise
*(Footnote Continued Next Page)*

1. Whether the trial court erred in granting summary judgment where genuine issues of material fact remained, contrary to [Pennsylvania Rule of Civil Procedure] 1035.2 and *Summers v. CertainTeed Corp.*, 997 A.2d 1152 (Pa. 2010), which requires consideration of the entire record and viewing all facts in the light most favorable to the non-moving party[?]

2. Whether the trial court erred by disregarding expert evidence already in the record, including the detailed letters and *curriculum vitae* of Dr. Marvin Ament and the letter of Dr. Maxwell Chait, in contravention of *Summers*' mandate that the whole evidentiary record be considered at summary judgment[?]

3. Whether the trial court erred by resolving credibility issues at the summary-judgment stage, including the authenticity of an altered and critical intubation procedure note signed by David Romancheck, who falsely identified himself as a Registered Nurse[?]

4. Whether the trial court erred in granting counsel's petition to withdraw over [the] plaintiffs' objections, where the petition was premised on misrepresentations of material fact and breaches of confidentiality, directly depriving plaintiffs of the meaningful ability to participate in expert discovery and trial preparation, including the deposition of David Romancheck; and by overtly disregarding plaintiffs' filing of January 22, 2024[,] which contained discovery evidence that squarely refuted counsel's misrepresentations of material fact[?]

5. Whether the trial court erred in dismissing the claims of the Estate of Cory Allen Bisher with prejudice, where dismissal flowed directly from the wrongful allowance of counsel's withdrawal and compounded prejudice that left plaintiffs unable to secure replacement counsel[?]

6. Whether the trial court erred in enforcing scheduling deadlines and discovery obligations unevenly, penalizing [the] unrepresented plaintiffs while disregarding [the] defendants'

_____

issues in the argument portion of their brief that they failed to raise in their statement of questions involved, we deem those claims waived as discussed herein. *See King v. Stefenelli*, 862 A.2d 666, 670 n.2 (Pa. Super. 2004).

- 7 -

own noncompliance with the case management order requiring defense expert reports by August 1, 2025[?]

7. Whether the trial court erred by dismissing [the] defendants' motion for sanctions "without prejudice," leaving [the] plaintiffs under a continuing threat of renewed sanctions, which operated as intimidation and created a chilling effect wholly inconsistent with due process and [Pennsylvania Rule of Civil Procedure] 1023.1(c)[?]

8. Whether the trial court erred by issuing internally inconsistent factual findings regarding certificates of merit, and by using those contradictions to prejudice [the] plaintiffs—first acknowledging that a certificate of merit was filed with the amended complaint, then declaring the docket showed none, and ultimately faulting [the] plaintiffs for noncompliance arising from the court's own inconsistency[?]

Appellants' Brief at 16-19 (unnecessary capitalization and suggested answers omitted).

In their first issue, Appellants argue that the record contains multiple material disputes of fact that only a jury may resolve, including the number and nature of Cory's aspiration events. Appellants argue that Cory's death certificate correctly lists aspiration as the cause of death and that he aspirated on blood from his untreated gastrointestinal bleed during an intubation procedure performed without proper supervision or consent. Nevertheless, in counsel's petition to withdraw, counsel asserted that discovery had revealed multiple aspiration events, which Appellants allege is a conclusion that is unsupported in the record. *See* Appellants Brief at 31-32. Appellants rely on the deposition testimonies of: (1) Brian Civic, M.D., who stated that he was not aware of any aspiration events other than the catastrophic intubation; and (2) Jennifer Strow, D.O., who stated that if an earlier aspiration event

occurred, it likely happened when Cory was overdosed by his own nurse, which allegedly required two doses of Narcan to revive him and was a complication attributable to the defendants. *See id.*

Appellants also assert that there exists a material factual discrepancy requiring a jury's resolution where Appellants identify that an intubation record states that Cory aspirated "dark gastric contents," whereas the only version of that document produced in discovery was an amended note signed by David Romancheck, as a registered nurse, which, Appellants allege, "falsely recorded Cory's post-intubation secretions as 'clear.'" *Id.* at 32. Appellants call into question the authenticity of the amended intubation record insofar as Appellants maintain that Romancheck is not a licensed registered nurse and insofar as the original note was never produced in discovery, which, they state, raises credibility issues that can only be resolved by a jury. *See id.*

Our standard of review from a challenge to the grant of summary judgment is as follows:

> summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002); Pa.R.C[iv].P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. [*See*] *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt." *Id.* On appellate review, then,

an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

***Weaver v. Lancaster Newspapers, Inc.***, 926 A.2d 899, 902-03 (Pa. 2007) (internal citations omitted). To the extent that th[e appellate courts] must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. [***See i***]***d.*** at 903.

***Summers***, 997 A.2d at 1159.

Instantly, the trial court granted summary judgment in favor of the defendants because it concluded that Appellants failed to produce expert medical reports by the July 1, 2025 deadline, as set forth in the April 16, 2025 case management order, which resulted in Appellants' failure to establish a *prima facie* case for each of the elements of their causes of action. ***See*** Trial Court Opinion, 11/24/25, at 7. Specifically, the court found that Appellants failed to provide expert testimony to establish, to a reasonable degree of medical certainty, that the defendants' acts deviated from acceptable medical standards and that deviation was the proximate cause of the harms suffered. ***See id.*** at 8. We agree.

It is beyond cavil that expert testimony is generally required in medical negligence cases to establish: (1) the applicable standard of care; (2) the deviations from that standard; (3) causation; and (4) the extent of the injury. ***See Catlin v. Hamburg***, 56 A.3d 914, 920 (Pa. Super. 2012). An exception to that general rule exists where the case is simple or the lack of skill or care

is so obvious that it is within the range of experience and comprehension of lay individuals.[4]  *See Jones v. Harrisburg Polyclinic Hospital*, 437 A.2d 1134, 1137 (Pa. 1981).  As the plaintiffs in this case, it was Appellants' burden to establish a *prima facie* case:

> A plaintiff who brings a medical malpractice case in negligence must prove that the act or omission of the physician fell below the standard of care owed the patient.  This standard must be established by expert testimony.
>
> The general rule in this Commonwealth is that in order to establish a cause of action for medical malpractice, the plaintiff must present expert testimony establishing variance from accepted medical practice and that this deviation from community standards caused the plaintiff's injuries.  As in other negligence cases, the plaintiff in a medical malpractice case bears the burden of proving a causal nexus between the wrongful conduct and the injury as part of the *prima facie* case.  The plaintiff's burden of proof on this issue encompasses two separate and distinct burdens.  The first burden, the burden of production, refers to the responsibility of the plaintiff to present evidence of sufficient quality and weight that reasonably intelligent men could believe in the existence of a causal link sought to be established.  If the plaintiff fails to satisfy this initial burden, it becomes incumbent upon the trial judge to remove the issue from consideration by the jury, since any decision reached by the jury based on consideration of this evidence would involve an inordinate amount of speculation and conjecture.

*Hoffman v. Mogil*, 665 A.2d 478, 481 (Pa. Super. 1995) (citations, brackets, and ellipses omitted).

Further, as stated above, we emphasize that **competent evidence** is required to establish a *prima facie* case sufficient to defeat a motion for

---

[4] Appellants do not assert that any exception to the general rule requiring expert testimony applies in this case.

summary judgment. *See Shepard v. Temple University*, 948 A.2d 852, 856 (Pa. Super. 2008) (stating "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. **Failure of a non-moving party to adduce sufficient evidence on an issue essential to his [or her] case and on which he [or she] bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law**.") (citation omitted; emphasis added); *Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 777 A.2d 84, 88 (Pa. Super. 2001) (stating "In order to withstand a motion for summary judgment, a non-moving party must adduce **sufficient evidence** on an issue essential to his [or her] case and on which he [or she] bears the burden of proof such that a jury could return a verdict in his [or her] favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to summary judgment.") (emphasis added); *Eaddy v. Hamaty*, 694 A.2d 639, 642 (Pa. Super. 1997) (noting that to satisfy *prima facie* cause of action for medical malpractice "the plaintiff must offer an expert witness **who will testify** to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered") (citation and quotation marks omitted; emphasis added); *Corbett v. Weisband*, 551 A.2d 1059, 1064 (Pa. Super. 1988) (stating "To establish a *prima facie* case of professional medical negligence,

[the plaintiff] must prove **by competent evidence** that the conduct of [the defendant] fell below the standards of reasonable medical practice, and that [the plaintiff's] injuries [were] caused by [the defendant's] failure to provide such medical care.") (citation and quotation marks omitted; emphasis added).

After our review, we conclude that Appellants incorrectly attempt to defeat summary judgment by offering allegedly disputed material facts, but they ignore that **they failed to adduce sufficient competent evidence** to establish a *prima facie* case, which is an independent and sufficient reason to grant summary judgment. *See Collins v. Philadelphia Suburban Dev. Corp.*, 179 A.3d 69, 73 (Pa. Super. 2018) (stating "**a record that supports summary judgment will either** (1) show the material facts are undisputed **or** (2) **contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury**.") (citation omitted; emphasis added). As we discuss in greater detail below, absent expert reports (or other competent evidence, i.e. expert affidavits or expert deposition testimony) that establish the four elements of a medical negligence cause of action, we conclude that there was not sufficient competent evidence in the record to support a *prima facie* case of medical professional negligence. *See Catlin*, 56 A.3d at 920; *Shepard*, 948 A.2d at 856. Therefore, summary judgment was appropriate. *See Summers*, 997 A.2d at 1159. Accordingly, no relief is due on Appellants' first issue.

Appellants' second issue dovetails with their first issue insofar as they argue the existence of a genuine issue of material fact. Specifically, Appellants assert that the trial court wrongly disregarded signed letters and the *curriculum vitae* of Dr. Marvin Ament, M.D., which contained the minimum content usually found within a certificate of merit and which was allegedly sufficient to defeat summary judgment. **See** Appellants' Brief at 33-34. Appellants also rely on the letter of Dr. Maxwell Chait, M.D., which they allege substantively corroborates their medical malpractice claims. **See id.** at 35. Further, Appellants cite to **Hightower-Warren v. Silk**, 698 A.2d 52 (Pa. 1997), for the proposition that expert support at the certificate of merit stage is not meant to be a substitute for full trial testimony, but it serves to demonstrate that the claims have a legitimate basis. **See id.** Appellants allege that the letters and *curriculum vitae* established a genuine issue of material fact. **See id.** at 35-36. Appellants urge that substance, rather than form, should control and cite to Pennsylvania Rule of Civil Procedure 126 and **Womer v. Hilliker**, 908 A.2d 269 (Pa. 2006). **See id.** at 36-37. We find no relief is due.

After our review, initially, we observe that Appellants conflate the requirements of a certificate of merit with those for establishing a *prima facie* medical negligence case. **See, e.g.**, **Bisher v. Lehigh Valley Health Network, Inc.**, 265 A.3d 383, 390 (Pa. 2021) (stating that "The [certificate of merit] signals to the parties and the trial court that the plaintiff is willing to attest to the basis of his [or her] malpractice claim; that he [or she] is in a

position to support the allegations he [or she] has made and that resources will not be wasted if **additional pleading and discovery take place**.") (quotation marks and ellipsis omitted; emphasis added); ***see also Lutz v. Heckman***, 2021 WL 50434, at \*21-22 (Pa. Super., filed Jan. 6, 2021) (unpublished memorandum decision) (cited for persuasive authority pursuant to Pa.R.A.P. 126) (stating "A certificate of merit is merely a filing certifying that an expert report can be produced in a medical malpractice action; **the certificate does not supplant the ultimate expert report**.") (emphasis added); ***Eaddy***, 694 A.2d at 642 (noting, to support *prima facie* case, plaintiff must identify and produce "an expert witness **who will testify** 'to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'") (citation omitted; emphasis added).

Instantly, the trial court granted summary judgment on the basis that Appellants failed to timely produce the requisite expert reports, which relates to Appellants' *prima facie* case and not the sufficiency of the certificates of merit. **See** Trial Court Opinion, 11/24/25, at 7. Although we recognize the existence in the record of the referenced letters and *curriculum vitae*, as identified by Appellants, none of these documents serves the purpose of the expert report, which establishes the necessary *prima facie* case. **See *Keystone Aerial Surveys, Inc***, 777 A.2d at 88; ***see also Lutz***, 2021 WL 50434, at \*21-22.

- 15 -

Further, none of the documents connected to Drs. Ament and Chait, as identified by Appellants, is competent evidence, as is required to defeat summary judgment. **See Shepard**, 948 A.2d at 856; **Keystone Aerial Surveys, Inc.**, 777 A.2d at 88; **Eaddy**, 694 A.2d at 642; **Corbett**, 551 A.2d at 1064. The documentation identified by Appellants is hearsay[5] and, alone, is not competent evidence that is sufficient to meet Appellants' burden of production. **See, e.g.**, **Jones Appeal**, 297 A.2d 117, 121 (Pa. 1972) (noting documentary evidence, by itself, is hearsay and not competent evidence). In fact, as Appellants made no attempt at all to meet their burden of producing expert reports on the four elements of their cause of action, we observe that Pennsylvania Rule Civil Procedure 126 cannot apply. **See Womer**, 908 A.2d at 280 (noting that Rule 126 applies to substantial compliance and not non-compliance). Accordingly, we find Appellants are not entitled to any relief on their second issue on appeal.

In their third issue on appeal, Appellants argue that it was error to resolve credibility and authenticity issues at summary judgment, especially insofar as Appellants allege that discovery was incomplete. **See** Appellants' Brief at 38-41. Appellants maintain that the court wrongly prevented a jury from determining the credibility of a document—namely, an "altered note" signed by David Romancheck, who Appellants allege is not a certified registered nurse anesthetist, which alleged falsehood, they maintain, bears

---

[5] Appellants do not suggest a hearsay exception applies, and we discern none.

on the authenticity of the note. Appellants also highlight the fact that no original note was ever produced in discovery. Further, Appellants allege a factual discrepancy requiring a jury's resolution insofar as the "altered" note:

> records Cory's post-intubation secretions as "clear" and states "Complications: none." Yet contemporaneous medical records documented "massive aspiration of **dark** gastric contents," consistent with a gastrointestinal bleed. The original [certified registered nurse anesthetist] note does not appear in any of the complete sets of records provided to [the p]laintiffs. This absence, combined with the inconsistencies, raises a material issue of authenticity and credibility.

Appellants' Brief at 38 (emphasis in original). Moreover, Appellants suggest discovery was incomplete because they never deposed Romancheck, thereby precluding entry of summary judgment. *See id.* at 39. In connection with this claim, Appellants allege they suffered a structural injustice because counsel was permitted to withdraw based on his mischaracterizations of the record, which the court accepted, and Appellants did not have the resources, operating *pro se*, to depose Romancheck. *See id.*

Appellants cite to two cases—one which is non-existent—for the rules that summary judgment may not be entered where discovery is incomplete or credibility issues remain. *See id.* at 40 (citing *Gibson v. Bicknell*, 668 A.2d 1370 (Pa. Super. 1995),[6] and *Washington v. Baxter*, 719 A.2d 733 (Pa.

---

[6] This cited case does not exist. Elsewhere in their brief, Appellants cite to *Gonzalez v. Procaccio Bros. Trucking Co.*, 268 A.3d 528 (Pa. Super. 2021), and *In re Estate of Pittman*, 636 A.2d 1166 (Pa. Super. 1994), which also do not exist. We remind Appellants that litigants must cite to "pertinent" authority. *See* Pa.R.A.P. 2119(a). Such misstatements and/or

*(Footnote Continued Next Page)*

1998)). Similarly, Appellants assert that the trial court improperly entered summary judgment where it weighed disputed facts against Appellants as the non-moving party, in violation of Rule 1035.2 and *Summers*. Appellants conclude that "the grant of summary judgment on this record deprived [the p]laintiffs of the opportunity to confront a key witness and have a jury resolve the factual disputes[.]" Appellants' Brief at 41. We find no relief is due.

After our review, we conclude that because we already found that summary judgment was properly entered insofar as Appellants failed to establish a *prima facie* case in response to the defense motions for summary judgment, there was no **material** factual dispute that could be presented to a jury. *See Keystone Aerial Surveys, Inc.*, 777 A.2d at 88. Indeed, Appellants failed to establish any of the necessary elements of their cause of action through expert testimony, which is necessary for forming the basis of any material factual dispute. *See Collins*, 179 A.3d at 73. Further, we observe that Appellants' claims of structural injustice ring hollow where over eighteen months elapsed between counsel's withdrawal and the court's grant of summary judgment, which offered Appellants sufficient time to seek new counsel or proceed *pro se*. To the extent that Appellants complain that they were proceeding *pro se* and should not be held to unfairly restrictive or

_____

misrepresentations, if further disseminated, undermine the accuracy and reliability of the law Appellants purport to reference. Moreover, we remind Appellants that we may dismiss an appeal if the brief defects are substantial. *See* Pa.R.A.P. 2101.

impossible standards, we find no relief is due because *pro se* status confers no special benefits upon parties. ***See Hoover v. Davila***, 862 A.2d 591, 595 (Pa. Super. 2004) (noting "A *pro se* litigant is not absolved from complying with procedural rules."); ***see also Jordan v. Pa. State Univ.***, 276 A.3d 751, 761 (Pa. Super. 2022) (stating "[A]lthough we are willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself [or herself] in a legal proceeding must, to a reasonable extent, assume that his [or her] lack of expertise and legal training will be his [or her] undoing.") (citation, quotation marks, and brackets omitted). Accordingly, no relief is due on Appellants' third claim.

In their fourth issue, Appellants assert that the trial court erred in granting counsel's petition to withdraw where that withdrawal prejudiced Appellants. **See** Appellants' Brief at 41-48. Specifically, Appellants allege that counsel's petition wrongly omitted the expert support of Dr. Ament, whose signed letters and *curriculum vitae* had supported the certificates of merit since 2018. Appellants complain that counsel incorrectly identified the existence of multiple aspiration events in his withdrawal petition and failed to secure appropriate experts, despite: (1) Dr. Civic's deposition testimony stating that Dr. Civic was unaware of any aspiration events other than the catastrophic event; and (2) Dr. Strow's testimony that, if there was an additional aspiration event, "it was most likely when Cory was rendered unconscious by his own nurse as a result of a drug overdose for which he had

- 19 -

to be revived with Narcan—a circumstance plainly attributable to [the d]efendants, not to Cory, which actually strengthens [the p]laintiffs' position[.]" Appellants' Brief at 43. Appellants complain that the trial court failed to address these inconsistencies when it granted counsel's withdrawal. *See id.* at 44. In this portion of their brief, Appellants again raise the issue of Romancheck's credibility and complain that discovery was incomplete insofar as Romancheck was not deposed. *See id.* at 45-46.

Appellants allege the existence of even further structural prejudice insofar as the trial court ordered the grant of counsel's withdrawal and insofar as counsel's petition to withdraw wrongly publicly discredited the merits of Appellants' case in the eyes of other potential plaintiffs' counsel. Specifically, Appellants allege:

> By disregarding [the] plaintiffs' objections and accepting counsel's self-serving misrepresentations as truth—while simultaneously treating discovery as complete despite leaving a critical deposition undone—the trial court did more than simply allow withdrawal: it put its imprimatur on a false narrative that doomed [the] plaintiffs' case. This compounded prejudice was not an exercise of discretion; it was a denial of due process. The predictable—indeed, inevitable—result was the dismissal of the estate's claims[7] with prejudice on January 17, 2025 [], leaving [the] plaintiffs without counsel, without expert discovery, and without a fair chance to be heard on the merits.
>
> The prejudice here was not abstract but structural: the very attorney whose withdrawal created the prejudice was never replaced, and the barriers left in its wake ensured he could not be replaced. The only corrective capable of addressing such

---

[7] We remind Appellants that, as non-attorneys, they may not represent claims raised by the estate. *See supra* at n.1.

prejudice is one that restores [the] plaintiffs to the position they occupied before withdrawal—with safeguards in place to ensure fairness going forward.

Appellants' Brief at 47-48 (unnecessary capitalization omitted).  Again, we find no relief is due to Appellants.

Attorney Aussprung has filed an *amicus curiae* brief in this Court.  In his brief, Attorney Aussprung, who is also a licensed doctor of medicine, emphasizes that it is his professional opinion that the element of causation in Appellants' cause of action could not be established, as follows:

[T]he existing expert support from Dr. Ament and Dr. Chait, who are both [g]astroenterologists opining on the negligent management of the gastrointestinal bleed, will not be sufficient on the issue of causation of death.

Counsel concluded that in order to win this case at trial, there must be a clear link between the gastrointestinal bleed (that was negligently managed) and the aspiration, respiratory distress, and eventual death of [the d]ecedent (the cause of death).

[The p]laintiffs' counsel sought to link these issues by seeking expert opinions in the medical fields of Critical Care, Pulmonary Medicine, and Anesthesia, but none of these experts would support the legal causation issues.  In fact, it became clear that [the decedent] had an underlying aspiration condition, which existed despite the gastrointestinal bleed, and was likely related to Decedent's underlying medical disability.

[T]he medical records clearly evidence multiple aspiration events, including the aspiration pneumonia that started Decedent's hospitalization.

While opinions may vary on the number of aspiration events (which in itself is not negligent), the legal issue remains that the law requires medical expert support linking negligence to the cause of death.

It remains [the p]laintiffs' prior counsel's opinion that, without the needed experts in Critical Care, Pulmonary Medicine, and

Anesthesia, linking the gastrointestinal bleed to the aspiration and cause of death would not be successful at trial.

*Amicus Curiae* Brief of Leon Aussprung, M.D., Esquire at 8-9.

The Pennsylvania Supreme Court has explained that appellate courts generally review a trial court's grant of an attorney's application to withdraw for an abuse of discretion. **See Cohen Appeal**, 128 A.2d 114, 116 (Pa. 1956) (stating "ordinarily the determination of the right of counsel to withdraw is within the discretion of the court before whom the case is pending").

An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

**Harman ex rel. Harman v. Borah**, 756 A.2d 1116, 1123 (Pa. 2000) (citations and quotation marks omitted).

This Court has concluded that where parties "have failed to make any payment for legal fees and are without reasonable prospect of being able to pay in the future," it is appropriate to grant a requested withdrawal. **Lincoln Ave. Indus. Park v. Norley**, 677 A.2d 1219, 1220 n.1 (Pa. Super. 1996).

In the order granting counsel's petition to withdraw, the trial court reasoned in support of its decision as follows:

There is a fundamental disagreement between Attorney Aussprung and [the] plaintiffs about the validity of [the] plaintiffs' medical negligence claim. [The] plaintiffs believe that the death of [their] decedent was caused by gastrointestinal bleeding. On the other hand, Attorney Aussprung believes, based on his

consideration of the facts and opinions developed through pretrial discovery, that [the] decedent died as a result of aspiration causing septic shock and respiratory failure, and that in view of the inability to present the requisite expert testimony, [the] plaintiffs' case will ultimately fail. [Appellants] claimed at oral argument that Attorney Aussprung is misrepresenting the facts of the case and has not diligently litigated the case on behalf of [the] plaintiffs. However, the [c]ourt sees no evidence to support [Appellants'] allegations, but rather discerns a good faith disagreement regarding the merits of [the] plaintiffs' case. The court also discerns a complete breakdown in the attorney-client relationship that portends future complications should Attorney Aussprung be required to remain in the case.

In addition, Attorney Aussprung's firm has so far expended thirty thousand dollars in connection with its representation of [the] plaintiffs, and if required to continue its representation of [them] to conclusion of the trial court litigation, will expend an additional thirty to forty thousand dollars. A law firm which engages in personal injury litigation routinely advances significant sums of money required to litigate a personal injury lawsuits. However, a law firm does so in anticipation that the lawsuit will be successful, and therefore, will not only recoup the advance costs but will also earn a percentage of the settlement or verdict. Here, it is Attorney Aussprung's opinion, based on his years of experience as both a physician and lawyer, that [the] plaintiffs' case will ultimately not be successful. Under the circumstances, requiring Attorney Aus[s]prung and his law firm to remain in the case would be an unreasonable financial burden.

Order, 2/1/24, at 2-3 n.1 (unnecessary capitalization omitted). In its Rule 1925 opinion, the trial court further explained why, in its view, there was no abuse of discretion in permitting counsel to withdraw:

Appellants' former counsel was not misrepresenting facts[. Instead,] counsel and Appellants had a good faith disagreement regarding the merits of the case and [] mandating the continuance of representation would have resulted in an unreasonable financial burden on counsel. The record is devoid [of any] instances of a breach of confidentiality by Appellants' former counsel. Permitting Appellants' former counsel to withdraw under these circumstances was neither plain error nor an abuse of discretion.

- 23 -

Trial Court Opinion, 11/24/25, at 10.

After our review, we discern no abuse of discretion in the trial court's grant of counsel's application to withdraw. **See Cohen**, 128 A.2d at 116. We conclude that counsel appropriately pursued Appellants' claims and sought the necessary evidence on causation from relevant experts, which finding we base on Attorney Aussprung's representations to the trial court and this Court, to which he owes duties of candor and obligations of investigation. **See Commonwealth v. Brown**, No. 32 EM 2023, at *97 (Pa. 2026) ("A concomitant to the lawyer's duty of candor is the obligation to conduct a reasonable investigation before making representations to a court."). At the point in which counsel determined, through reasonable investigation, that causation would not be established, it was appropriate to grant counsel's withdrawal because the likelihood of winning Appellants' case and recovering counsel's expenses in connection therewith, and the likelihood of recovering counsel's fee, were severely limited, if not extinguished. **See Lincoln Ave. Indus. Park**, 677 A.2d at 1220 n.1. Further, we note that the trial court granted counsel's withdrawal petition on February 1, 2024, and did not grant summary judgment until over eighteen months later, on September 9, 2025, thereby affording Appellants sufficient time to pursue their claims, *pro se*, or represented by alternative counsel. Accordingly, no relief is due on Appellants' fourth issue on appeal.

In their fifth issue, Appellants purport to raise claims on behalf of Cory's estate. **See** Appellants' Brief at 48-51. Nevertheless, we reemphasize, as we

noted above, *see supra* at n.1, that the estate is not a party to this appeal, and the Pennsylvania Supreme Court has already decided that only an attorney may represent a decedent's estate. *See Bisher*, 265 A.3d at 389-90 ("Carla and Brenton, who are not licensed attorneys, are permitted only to represent themselves when pursuing their respective wrongful death actions. Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. Survival actions[,] which are brought on behalf of the decedent's estate, however, must be filed through an attorney.") (citation and quotation marks omitted). Accordingly, Appellants are not entitled to relief on their fifth issue.

In their sixth issue, Appellants maintain that the trial court erred by applying the rule of coordinate jurisdiction to deny reconsideration of the February 1, 2024 order, despite the presence of exceptions that compelled review. *See* Appellants' Brief at 51-54. Nevertheless, Appellants failed to raise any issue relating to the rule of coordinate jurisdiction in their Rule 2116 statement of questions involved. *See id.* at 16-19. Therefore, we may not reach the merits of the issue. *See Boutte v. Seitchik*, 719 A.2d 319, 326 (Pa. Super. 1998) (noting "issues that are not set forth in the statement of questions presented or reasonably suggested thereby are deemed waived"); *see also* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Accordingly, no relief is due on Appellants' sixth issue.

In their seventh issue presented in their argument, Appellants allege that the trial court erred by enforcing the scheduling deadlines strictly against Appellants while overlooking the defendants' noncompliance, which created a procedural imbalance that denied Appellants their due process rights. *See* Appellants' Brief at 55-58. Specifically, Appellants assert that the trial court created an unfair disparity because Appellants, "stripped of their counsel **by the court's own ruling**, were held to scheduling deadlines as though they were seasoned litigators, while [the] defendants' noncompliance with the case management order was ignored." *Id.* at 55 (emphasis in original; unnecessary capitalization omitted). Appellants maintain that the defendants did not serve their expert reports by August 1, 2025, as directed in the case management order, whereas Appellants, "who had placed expert support into the record years earlier through Dr. Marvin Ament's detailed letters and *curriculum vitae*—were faulted for not producing *additional* reports, despite the court's own orders having made it impossible for them to do so." *Id.* at 55-56 (emphasis in original; citations omitted).

Appellants argue that they incurred further prejudice insofar as:

> This imbalance was intensified at the August 29, 2025 oral argument, when the trial court questioned [Carla Bisher] about her education, age, and mental health—inquiries aimed at suggesting she was "capable" of compliance despite her repeated filings explaining otherwise. Those questions blatantly ignored the elephant in the room: that [the] plaintiffs were proceeding *pro se*, not by choice, but because their counsel was wrongfully permitted to withdraw on material misrepresentations that contaminated the record. To treat [the] plaintiffs' inability to produce expert reports under those circumstances as equivalent

to [the] defendants' strategic failure to comply with a clear deadline is not parity; it is prejudice.

This disparity compounded the prejudice already inflicted by the withdrawal order. [The] plaintiffs were left unrepresented, without resources to conduct expert discovery, and under the cloud of potential sanctions, yet were expected to comply with every procedural requirement flawlessly. Meanwhile, [the] defendants—represented not by one but **two** well-resourced law firms—were excused from their own obligations without consequence.

*Id.* at 56-57 (emphasis in original; citation and unnecessary capitalization omitted).

Appellants further complain that "[b]y excusing [the] defendants' disregard of the case management order while leveraging [the] plaintiffs' court-created deficiencies against them, the trial court distorted the record to [the] defendants' advantage," in contravention of the standard for summary judgment, which requires viewing the evidence in the light most favorable to the non-moving party. *Id.* at 57 (unnecessary capitalization omitted). Again, we find no relief is due.

After our review, we perceive that Appellants misunderstand their burden of production as the plaintiff and non-moving party at the summary judgment stage. *See Shepard*, 948 A.2d at 856. Further, we observe that the defense has no burden of proof in this medical malpractice case. *See Hoffman*, 665 A.2d at 481; *see also Winschel v. Jain*, 925 A.2d 782, 789 (Pa. Super. 2007). To the extent that Appellants complain that they were proceeding *pro se*, we find no relief is due where we already determined that the trial court appropriately granted counsel's withdrawal, and *pro se* status

confers no special benefits upon parties. *See Hoover*, 862 A.2d at 595; *see also Jordan*, 276 A.3d at 761. In any event, Appellants failed to produce any expert reports at all; thus, there is nothing to liberally construe on their behalf as *pro se* litigants. *See Jordan*, 276 A.3d at 761. Accordingly, no relief is due on Appellants' seventh issue.

In their eighth issue on appeal, Appellants assert that the trial court erred in issuing internally inconsistent factual findings insofar as the trial court's orders of September 18, 2024, and January 17, 2025, cannot be reconciled. *See* Appellants' Brief at 58-61. Specifically, Appellants claim that:

> On September 18, 2024, the court stated unequivocally that Attorney Aussprung "filed an amended complaint, along with the required certificate of merit."
>
> Yet four months later, in its January 17, 2025 order, the same court declared: "the docket does not indicate any amended or updated certificates of merit were filed with the amended complaint." Both statements cannot be true.
>
> This contradiction was not academic. In its January 17 order, the court treated the latter version as controlling, ordering plaintiffs to "verify" certificates of merit that they themselves had not filed and had no ability to confirm. [The] plaintiffs—as *pro se* litigants without docket access[1] and without the benefit of counsel—were placed in the impossible position of being required to verify the existence and content of documents they did not file, did not control, and could not locate. When [the] plaintiffs couldn't perform this impossible demand, [the] defendants moved for sanctions. The court then denied those sanctions "without prejudice," leaving [the] plaintiffs under an ongoing threat of renewed penalties tied to an inconsistency of the court's own making.
>
> > [1] [The] plaintiffs do not have access to the Lehigh County docket because they cannot afford the $300 **annual** fee.

> The prejudice is heightened by the posture of this case. [The] plaintiffs had **no role** in deciding whether Attorney Aussprung filed a [new] certificate of merit alongside his amended complaint.

*Id.* at 59 (emphasis in original; citations and unnecessary capitalization omitted). Appellants conclude that,

> Here, the contradictions cut only one way: against [the] plaintiffs. While the September 18 order confirmed that a certificate of merit was filed with the amended complaint, the January 17 order erased that finding, reframed the record as deficient, and then faulted [the] plaintiffs for not fixing an omission they neither created nor could remedy. The effect was to convert an inconsistency of the court's own making into a weapon of dismissal and intimidation.
>
> At a minimum, these contradictory findings created a genuine dispute of material fact that should have precluded summary judgment. More fundamentally, they illustrate how the trial court's errors compounded to deny [the] plaintiffs the opportunity to have their claims heard on the merits. Reversal is warranted so that this case may proceed free from the distortions caused by inconsistent judicial findings.

*Id.* at 60-61 (unnecessary capitalization omitted). We find no relief is due on this issue.

After our review, we find that the errors complained of in this section of Appellants' brief are hypothetical and nonprejudicial to Appellants, especially insofar as Appellants allege that, although sanctions were ultimately **denied**, that ruling was made without prejudice to raising the sanctions issue again. We observe that, in all litigation, all parties always operate under a threat of sanctions because other parties, or the court *sua sponte*, may raise the issue of sanctions at any time, and the issue is case-specific. *See City of Philadelphia v. FOP Lodge No. 5 (Breary)*, 985 A.2d 1259, 1269 (Pa.

2009) (stating "Generally, courts are afforded great discretion in fashioning remedies or sanctions for violations of discovery rules and orders.") (footnote omitted); *see also id.* at 1270 (stating "in considering sanctions for noncompliance with other pre-trial procedural rules, [the Pennsylvania Supreme Court has] noted that enforcement of procedural rules is governed by the facts and circumstances of each particular case") (citation and quotation marks omitted). Moreover, as we stated above, Appellants were not absolved of their responsibility to follow procedural rules and were afforded eighteen months in which to prosecute their case after Attorney Aussprung's withdrawal and prior to the grant of summary judgment. *See Hoover*, 862 A.2d at 595. Accordingly, no relief is due on Appellants' eighth issue.

In a ninth issue presented in the argument portion of their brief, Appellants allege that it was error to deny the motion for sanctions without prejudice, because that determination created intimidation, a specter of sanctions, and deprived Appellants of their due process rights.[8] *See* Appellants' Brief at 61-64. Specifically, Appellants assert that:

> Sanctions cannot be left as a permanent Sword of Damocles over one side of the case. To do so converts the rules of procedure into a weapon of intimidation rather than a safeguard of fairness. By leaving the sanctions motion unresolved, the trial court denied

---

[8] This issue corresponds with issue seven in Appellants' statement of questions involved.

[the] plaintiffs due process and ratcheted up the prejudice already
suffered.

And [the] plaintiffs cannot help but wonder if this wasn't a shot
across the bow for their filings of [September 23, 2024,] and
[November 27, 2024], which concern potential conflicts of interest
with the [Lehigh Defendants] (whose attorney in this very case—
Howard Stevens/Gross McGinley LLP—had hosted the judge's
campaign fundraiser—and whose other attorney, Michael J. Blum,
admitted having attended during the hearing on [November 27,
2024]).

[The] plaintiffs take issue with the fact that this appearance of
conflict of interest was never disclosed—even as far back as
2018[,] when [the] plaintiffs first expressed concerns and the
topic was raised during oral arguments on August 6, 2018.

And because the court tends to wield sanctions unfairly, [the]
plaintiffs hesitate to mention it even now…but feel they owe it to
their son and all the other victims of Lehigh Valley Hospital-Cedar
Crest who undoubtedly follow him because, if this case is any
indication, conflicts in the court system breed a lack of
accountability without which medical harm would not be the "Third
Leading Cause of Death."

*Id.* at 63-64 (citations and unnecessary capitalization omitted). Again, we

find no relief is due.

After our review, we reemphasize that in all cases the threat of sanctions

may be raised at any time such that there is no prejudice to a party where a

threat of sanctions looms over that party continuously throughout the

litigation. *See FOP Lodge No. 5 (Breary)*, 985 A.2d at 1269-70. To the

extent that Appellants purport to raise a challenge to the trial court's

appearance of a conflict of interest, that argument is waived insofar as

Appellants present in their brief no developed claim with citation to case law

or relevant authority regarding the issue of recusal.[9] ***See Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014) ("[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant"); ***see also*** Pa.R.A.P. 2119(a); Pa.R.A.P. 2101. Accordingly, no relief is due on Appellants' ninth issue.

Appellants further purport to raise a tenth issue in the argument portion of their brief regarding cumulative error. ***See*** Appellants' Brief at 65-66. Nevertheless, this issue is not preserved for our review where it is not fairly suggested by the statement of questions involved. ***See id.*** at 16-19; ***see also Boutte***, 719 A.2d at 326; Pa.R.A.P. 2116(a). In any event, there can be no valid theory of cumulative error where we have discerned no errors. Accordingly, no relief is due on this final claim.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/3/2026

---

[9] ***See, e.g.***, ***Lomas v. Kravitz***, 170 A.3d 380, 389 (Pa. 2017) (setting forth standard of review for motion for recusal).